UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
In re:                                                                          Chapter 7

    BHISHAM NANDALALL,                                 Case No.: 06-12252

                                Debtor.
-----------------------------------------------------------------
    WILLIAM M. McCARTHY, as Chapter 7
    Trustee to the Bankruptcy Estate of
    BHISHAM NANDALALL,

                              Plaintiff,                              Adv. No.: 08-90118

                          v.

    BHISHAM NANDALALL,

                              Defendant.
-----------------------------------------------------------------

APPEARANCES:

O'Connor, O'Connor, Bresee & First, P.C.          Michael J. O'Connor, Esq.
*Attorneys for Debtor/Defendant*
20 Corporate Woods Blvd.
Albany, NY 12211

Christian H. Dribusch, Esq.
*Attorney for the Chapter 7 Trustee/Plaintiff*
Patroon Building
5 Clinton Square
Albany, NY 12207

Hon. Robert E. Littlefield, Jr., Chief United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

       Currently before the court is an adversary proceeding commenced by the Chapter 7

Trustee, William M. McCarthy (the "Trustee"), against Bhisham Nandalall (the "Debtor"), to

1

revoke his discharge pursuant to 11 U.S.C. §§ 727(d)(1) and (d)(2).[1]  The adversary complaint, filed August 4, 2008 (the "Complaint"), avers that revocation is warranted on two grounds: first, that the Debtor fraudulently failed to disclose his July 6, 2006 assignment of a note and mortgage to Ms. Gloria St. Andrews ("St. Andrews"); and second, that the Debtor fraudulently failed to report payments received from Lela Seecharan ("Seecharan"), an obligor under the note and mortgage.

On September 3, 2008, the Debtor filed an answer denying the material allegations of the Complaint and asserting the affirmative defense of inadvertent or otherwise excusable mistake. A trial in this proceeding was held on May 5, 2009, at which time the court received a number of exhibits into evidence and heard testimony from the Debtor, Seecharan, and the Trustee.  In lieu of closing arguments, the court gave the parties an opportunity to submit post-trial memoranda of law.  The parties accepted, and the matter was submitted for decision on August 21, 2009.  The court, having heard sworn testimony and arguments of counsel and having considered the parties' pleadings and submissions in this proceeding, makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 157(b)(1), 157(b)(2)(F), 157(b)(2)(J), and 1334.

## FACTS

The relevant facts are as follows.[2]  The Debtor is an individual who immigrated to the United States from Ghana.  (Answer (No. 6) ¶¶ 5-6; Trial Tr. 27, May 5, 2009.)  He began his

---

[1] Unless otherwise noted, all statutory references herein are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532.

[2] The facts are gleaned from the Uncontested Statement of Facts on Adversary Complaint to Revoke Discharge Pursuant to 11 U.S.C. § 727(d) (No. 13; hereinafter "Joint Statement of Facts"), submissions of counsel, and the trial transcript.

2

career in the garment industry in New York City. (Trial Tr. 27.) The Debtor moved to Schenectady, New York in 2000, obtained a real estate license in 2001, and acquired twelve properties between 2001 and 2006. (Trial Tr. 24, 27-28.) His acquisitions primarily consisted of investment properties, including real property on 1128 State Street in Schenectady (the "State Street Property"), and three residences and a bowling alley on Crane Street in Schenectady (collectively, the "Crane Street Property").

By deed dated November 14, 2003, the Debtor sold his right, title, and interest in the State Street Property to his social acquaintances, Bhaskar Parsan and Lela Seecharan (collectively, the "Purchasers"). (Joint Statement of Facts ¶¶ 9, 11; Trial Tr. 50-51.) The Purchasers made a down payment of $50,000 against a purchase price of $100,000 and financed the balance with a note and mortgage in favor of the Debtor (the "Note and Mortgage"). (Trial Tr. 22-23, 30, 35.) Pursuant to the terms of the Note and Mortgage, the Purchasers promised to pay the Debtor $50,000 together with interest at 7 percent per annum with annual payments amortized over fifteen years, and a balloon payment on December 1, 2008. (Pl.'s Ex. 7.)

Between January 1, 2004 and the date of the filing of the Debtor's bankruptcy petition, the Purchasers made payments on the Note and Mortgage. (Joint Statement of Facts ¶ 12.) Over the twelve-month period starting January 1, 2005 and ending December 31, 2005, the Purchasers paid $5,400 on the Note and Mortgage, which accounts for twelve equal payments of $450. (Joint Statement of Facts ¶ 13; Pl.'s Ex. 9.) The Purchasers similarly paid $5,400 on the Note and Mortgage for the twelve-month period starting January 1, 2006 and ending December 31, 2006. (Joint Statement of Facts ¶ 15.) The Debtor labeled the "mortgage" payments as such when filling out handwritten receipts for payments under the Note and Mortgage. (Pl.'s Ex. 9.) In his voluntary petition, however, the Debtor only disclosed receipt of "rent" payments. (Pl.'s

3

Ex. 2.)  On his 2005 tax return, the Debtor listed mortgage income of $5,400 whereas he listed the same amount as "other income" on his 2006 return.  (Joint Statement of Facts ¶¶ 14, 16; Trial Tr. 41-42; Pl.'s Ex. 12; Pl.'s Ex. 13.)

On July 6, 2006, the Debtor executed a document, entitled Assignment of Mortgage, purporting to transfer all his right, title, and interest in the Note and Mortgage to his "very good friend," St. Andrews.  (Pl.'s Ex. 8; Trial Tr. 24-25.)[3]  The assignment was properly recorded. (Joint Statement of Facts ¶ 17.)  According to the Debtor's Amended Statement of Financial Affairs, the Debtor made the assignment for no consideration.  (Def.'s Ex. A.)  When asked why he assigned the Note and Mortgage to St. Andrews, the Debtor testified at trial: "I didn't know what, how to pay her and what to do as she was my very good friend and I thought that, you know, that would be something nice if I could, you know, just let her take that in terms of payment of the money I owed her."  (Trial Tr. 25.)   While the Debtor acknowledges owing St. Andrews around $8,000, he assigned her the $50,000 Note and Mortgage which was paying $450 per month.  (Trial Tr. 24-25.)

On August 31, 2006, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (the "Petition"), thereby commencing this bankruptcy case.  The purported purpose for filing was to stay foreclosure on the Crane Street Property, sell it, satisfy creditors with the proceeds from sale, and realize a surplus dividend.  (Answer ¶¶ 10, 12, 14; Trial Tr. 8, 32, 33, 39, 49.)  The evidence reveals, however, that the mortgage holder had foreclosed on the Crane Street Property in July 2006, approximately one month prior to the Petition date.  (Trial Tr. 9, 11, 47.)

---

[3] While the parties stipulate to the fact that the Note and Mortgage was assigned on July 6, 2006, the Assignment of Mortgage is dated July 10, 2006. (Joint Statement of Facts ¶ 17; Pl.'s Ex. 8.)  The difference is not material to the matter before the court.

4

The Debtor signed the Schedules and Statement of Financial Affairs ("SOFA") and the Amended Statement of Financial Affairs ("Amended SOFA") under penalty of perjury. (Pl.'s Ex. 2; Pl.'s Ex. 3; Joint Statement of Facts ¶ 20.) In the Schedules and original SOFA, the Debtor made no mention of his interest in the Note and Mortgage or of his receipt of payments from the Note and Mortgage in the months before his bankruptcy filing. (Pl.'s Ex. 2.)

The SOFA, at item 1, called upon the Debtor to state the amount of income he received from employment, trade, profession, or operation of a business from the beginning of the calendar year to the commencement of this case as well as any such income received during the two years immediately preceding the calendar year. Here the Debtor stated $8,800 from "Rent" for 2006 and a "Loss" from "Rent" for 2005.

The SOFA, at item 2, called upon the Debtor to state the amount of income he received other than from employment, trade, profession, or operation of a business during the two years immediately preceding the commencement of the case. Here the Debtor did not list the payments received from the Note and Mortgage, but rather he answered "none."

The SOFA, at item 6, called upon the Debtor to describe any assignment of property for the benefit of creditors made within 120 days immediately preceding the commencement of this case. Here the Debtor did not list his assignment of the Note and Mortgage for the benefit of St. Andrews, but rather he answered "none."

The SOFA, at item 10, called upon the Debtor to list all property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within one year immediately preceding the commencement of the case. Here the Debtor did not list his transfer of the Note and Mortgage, but again he answered "none."

5

The SOFA, at item 14, called upon the Debtor to list all property owned by another person that the debtor holds or controls. The Debtor again answered "none."

Schedule B, the schedule of personal property, required the Debtor to disclose "accounts receivable" (item 16), "other liquidated debts owed to debtor" (item 18), "other contingent and unliquidated claims of every nature," with estimated value of each (item 21), and "other personal property of any kind not already listed" (item 35). In each instance, the Debtor answered "none." (Pl.'s Ex. 2.)

The first meeting of creditors was held on October 6, 2006. The Debtor did not disclose the cash receipts of the Note and Mortgage payments in his Petition or through his testimony at the meeting of creditors. (Joint Statement of Facts ¶¶ 32, 46; Trial Tr. 59-60.) Nor did he disclose the assignment of the Note and Mortgage. (Joint Statement of Facts ¶ 45.) The Trustee continued the meeting of creditors on several occasions to await the Debtor's tax returns. (Trial Tr. 62-63; Joint Statement of Facts ¶¶ 33-36.)

The deadline to file a complaint objecting to discharge under Federal Rule of Bankruptcy Procedure ("Rule") 4003(b) was December 5, 2006. On that date, the Trustee moved to extend the Rule 4003(b) deadline. The court granted the Trustee's motion and extended the deadline for an additional ninety days from January 24, 2007, the date of the entry of the order.

The Debtor did not appear at the February 2, 2007 continuation of the meeting of creditors. (Joint Statement of Facts ¶ 37.) The Trustee continued the meeting of creditors to March 2, 2007 and again to April 6, 2007. (Joint Statement of Facts ¶¶ 39, 42.) The Debtor did not appear on either of those dates. (Joint Statement of Facts ¶¶ 40, 43.) The Trustee closed the April 6, 2007 meeting of creditors. (Joint Statement of Facts ¶ 44; Trial Tr. 38.)

6

On April 23, 2007, the Trustee again moved to extend the Rule 4003(b) deadline because, although the Trustee had been provided with some documents relating to the Debtor's assets and transfers, the Debtor's tax returns remained outstanding. The Debtor filed a limited objection. The court granted a consent order extending the deadline for ninety days from April 23, 2007. After receiving an extension of time within which to file his 2006 tax return, the Debtor filed the return on June 8, 2007. (Trial Tr. 37-38; Pl.'s Ex. 13.) The Trustee received a copy of the return shortly thereafter. (Trial Tr. 38.)

The court granted the Debtor an uncontested discharge by order dated August 6, 2007. Prior to the discharge being issued, the Trustee was unaware of the Note and Mortgage or its assignment. (Trial Tr. 59.) These only came to light after the Office of the United States Trustee contacted the Trustee and brought the Note and Mortgage to his attention in or about the middle of August 2007. (Trial Tr. 38, 59.) The Debtor filed the Amended SOFA on September 17, 2007, disclosing the Note and Mortgage and its assignment. (Pl.'s Ex. 3; Trial Tr. 38.) In response to an inquiry by the Trustee, the Debtor provided the Trustee with an affidavit dated October 19, 2007. (Joint Statement of Facts ¶ 47; Pl.'s Ex. 5.) In his affidavit, the Debtor stated that the Note and Mortgage and the State Street Property it encumbered were, in his view, worthless. (Pl.'s Ex. 5.) The Debtor additionally stated that the mortgage was perpetually in default and that he therefore did not view it as having significant value. (Pl.'s Ex. 5.) In further explanation for his omission of the assignment, the Debtor claims that he was distracted by the pending foreclosure on the Crane Street Property, the divorce proceedings with his former spouse, and his fiancée's pregnancy. (Pl.'s Ex. 5; Trial Tr. 32-34.)

7

One year did not pass between the issuance of the Debtor's discharge and the commencement of this adversary proceeding. (Joint Statement of Facts ¶ 51.) The case has never been closed. (Joint Statement of Facts ¶ 50.)

**ARGUMENTS**

The Trustee asserts that revocation is warranted pursuant to § 727(d)(1) because Debtor's discharge was obtained through the Debtor's fraud in failing to disclose the Note and Mortgage and, when the Note and Mortgage was discovered, providing the Trustee misleading information as to the value of this asset. The Trustee further asserts that revocation is warranted pursuant to § 727(d)(2) because the Debtor received post-petition payments under the Note and Mortgage, which he knowingly and fraudulently failed to disclose to the Trustee.

The Debtor contends that his failure to disclose the assignment and transfer of the Note and Mortgage and his failure to disclose the receipt of payments under the Note and Mortgage were not intentional. Instead, the Debtor argues that the omission resulted from his distraction, stress, anxiety, confusion, and rush to file the Petition. The Debtor also argues that the Trustee had constructive notice of the existence of the Note and Mortgage, its assignment, and transfer.

**DISCUSSION**

Revocation of discharge is an extraordinary remedy. *Keeffe v. Natalie (In re Natalie)*, Ch. 7 Case No. 99-16195, Adv. No. 04-90007, slip op. at 5 (Bankr. N.D.N.Y Mar. 29, 2005) (citation omitted), *aff'd*, 337 B.R. 11 (N.D.N.Y. 2006), *aff'd*, 222 Fed. Appx. 97 (2d Cir. 2007). "The § 727(d) revocation provisions must be construed liberally in favor of the debtor and strictly against those objecting to discharge." *Id.* (internal quotation marks and citations omitted). The plaintiff has the burden of proving the objection to discharge by a preponderance of the evidence. *See* Fed. R. Bankr. P. 4005; *Adams v. Zembko (In re Zembko)*, 367 B.R. 253, 256 (Bankr. D. Conn. 2007) (citing *Wolfson v. Wolfson (In re Wolfson)*, 152 B.R. 830, 832

8

(S.D.N.Y. 1993)). "'Once sufficient evidence is presented by the plaintiff to satisfy the burden of going forward with the evidence, the burden thereafter shifts to the debtor to provide evidence to rebut the plaintiff's prima facie case. The plaintiff, however, always bears the ultimate burden of proving . . . the essential elements of an alleged objection to discharge.'" *In re Zembko*, 367 B.R. at 256 (quoting *PaineWebber, Inc. v. Gollomp (In re Gollomp)*, 198 B.R. 433, 440 (S.D.N.Y.1996)); *accord Ehrlich v. Richardson (In re Richardson)*, Ch. 7 Case No. 02-16234, Adv. No. 04-90044, slip op. at 11 (Bankr. N.D.N.Y. Aug. 8, 2005) (citing *First Am. Bank of N.Y. v. Bodenstein (In re Bodenstein)*, 168 B.R. 23, 28 (Bankr. E.D.N.Y. 1994); *Grogan v. Garner*, 498 U.S. 279, 287 (1991)). "However, while the law generally favors discharges in bankruptcy, the Code should be construed to protect the debtor only in those cases where there is no intent to violate its provisions." *United Bank of Denver Nat'l Ass'n v. Greenwalt (In re Greenwalt)*, 48 B.R. 804, 805 (D. Colo. 1985) (citations omitted). A discharge is reserved for an honest but unfortunate debtor and is predicated on full and accurate disclosure of all material facts. *See D.A.N. Joint Venture v. Cacioli (In re Cacioli)*, 463 F.3d 229, 234 (2d Cir. 2006); *Cont'l Ill. Nat'l Bank & Trust Co. of Chi. v. Bernard (In re Bernard)*, 99 B.R. 563, 570 (Bankr. S.D.N.Y. 1989). With these standards in mind, the court turns to analysis of the Trustee's first claim, that the Debtor's discharge should be revoked pursuant to 11 U.S.C. § 727(d)(1).

## I.  Section 727(d)(1)

"Section 727(d)(1) requires that (1) the debtor obtained a discharge through fraud, and (2) the movant did not know of the fraud predischarge."[4] *Natalie*, at 5–6. Additionally, a request to

---

[4] Section 727(d) provides, in relevant part:

> (d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge . . . if—
> (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;

9

revoke a debtor's discharge under § 727(d)(1) must be made within one year of the granting of the discharge, while a request to revoke a debtor's discharge under § 727(d)(2) must be made either within one year of the granting of the discharge, or before the case is closed. *See* 11 U.S.C. 727(e)(1).[5]

As regards the first element of § 727(d)(1), the Trustee "must establish that the Debtor committed actual fraud and that timely knowledge of such conduct would have provided grounds for denial of discharge." *In re Zembko*, 367 B.R. at 256. "Since the question of actual fraud involves the parties' state of mind, it is not ordinarily proven by direct evidence, but rather, by inference from other facts proven." *Id.* at 257 (internal quotation marks and citations omitted). To determine whether the Debtor acted with actual fraudulent intent in transferring away or concealing a valuable asset prior to his voluntary bankruptcy filing, the court looks to the Debtor's conduct and circumstances recognized by the Second Circuit as "badges of fraud," including:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.

*Id.* (citations omitted).

Here, the Debtor transferred the Note and Mortgage for inadequate consideration because the Note and Mortgage was worth over six times the amount he claimed to be owed by St.

---

> (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee . . . .

[5] The Trustee in this case commenced the adversary proceeding within one year after the Debtor received his discharge and prior to the closure of the case.

Andrews. According to the Debtor's testimony, St. Andrews was a "very close friend." The Debtor retained benefit of the property, as evidenced by his continued receipt of payments under the Note and Mortgage. Although the Debtor testified that he was remitting the mortgage payments to St. Andrews, his testimony is contradicted by his 2006 tax return, where he declared $5,400 of "other income" corresponding to his receipt of twelve equal mortgage payments of $450. (Joint Statement of Facts ¶ 15; Pl.'s Ex. 9.) By transferring the Note and Mortgage, the Debtor diminished his available assets to satisfy other creditors. The Debtor transferred the Note and Mortgage during the pendency of a foreclosure action against his Crane Street Property. Finally, the Debtor transferred the Note and Mortgage in the weeks leading to the filing of his Petition. Based on the presence of multiple badges of fraud, the court infers that the Debtor acted with actual fraudulent intent. *See Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 809 (Bankr. S.D.N.Y. 2005) (citation omitted) (holding that the presence of several badges of fraud can constitute clear and convincing evidence of actual fraudulent intent). Timely knowledge of the Debtor's conduct would have provided grounds to deny the Debtor a discharge. *See Scribner v. Bosket (In re Bosket)*, 369 B.R. 106, 110–11 (Bankr. W.D.N.Y. 2007); 11 U.S.C. § 727(a).[6] Therefore, the Trustee has presented sufficient evidence to establish the first element of a § 727(d)(1) claim.

---

[6] Section 727(a) provides, in relevant part:

    (a) The court shall grant the debtor a discharge, unless—
        . . . .
        (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, . . . or concealed, or has permitted to be transferred, removed, . . . or concealed—
            (A) property of the debtor, within one year before the date of the filing of the petition; or
            (B) property of the estate, after the date of the filing of the petition;
        (3) the debtor has concealed . . . any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
        (4) the debtor knowingly and fraudulently, in or in connection with the case—

As regards the second element of § 727(d)(1), the Trustee must establish that he neither knew, nor had reason to know, of the fraud prior to the granting of Debtor's discharge. If a party "has knowledge of a possible fraud, the burden is on that party to diligently investigate any possible fraudulent conduct before discharge. If the party waits until after discharge, that party risks dismissal of its § 727(d)(1) action." *Natalie*, *supra*, at 6 (citation omitted). "A party is charged with constructive notice of a transaction from the time it is properly recorded. That notice may be sufficient to bar a subsequent request to revoke a discharge." *Id.* (citation omitted).

Concerning actual knowledge, the court finds that the Trustee was unaware of the assignment until after the granting of Debtor's discharge. The Trustee testified credibly on that point. At issue is whether the Trustee should have discovered the assignment prediseharge. The parties stipulate to the fact that the Note and Mortgage was assigned on July 6, 2006 and that the assignment was recorded. (Joint Statement of Facts ¶ 17.) The court takes judicial notice of the Schenectady County Clerk's records, which show that the assignment was recorded on June 1, 2007. *See* Fed. R. Evid. 201. Because the assignment was properly recorded, the Trustee was charged with constructive notice of the assignment as of the date of recording, approximately two months prior to the granting of Debtor's discharge. *See Natalie*, *supra*, at 6 (citation omitted); 6 Collier on Bankruptcy ¶ 727.15(3) (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev. 2007) (citing *Zedan v. Habash (In re Habash)*, 360 B.R. 775 (N.D. Ill. 2007); *Pelletier v. Donald (In re Donald)*, 240 B.R. 141 (B.A.P. 1st Cir. 1999); *Peoples Bank, Inc. v. Herron (In re*

---

(A) made a false oath or account;
(B) presented or used a false claim;
(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs . . . .

*Herron)*, 49 B.R. 32 (Bankr. W.D. Ky. 1985)). More significantly, the $5,400 of "other income" on the Debtor's 2006 tax return should have prompted the Trustee to inquire into the source of that income. That he failed to do so prior to the Rule 4003(b) deadline cannot be reconciled with the requirements of § 727(d)(1). The Trustee has failed to meet his burden to show why the fraud was not discovered or why it was not discoverable prior to discharge. Notwithstanding the evidence that the Debtor obtained his discharge through fraud, the court has no basis to revoke the Debtor's discharge pursuant to § 727(d)(1). The court turns to analysis of Trustee's second claim, that the Debtor's discharge should be revoked pursuant to 11 U.S.C. § 727(d)(2).

### II. Section 727(d)(2)

"Section 727(d)(2) requires a debtor to report any acquisition of estate property or an interest in estate property. There is also a requirement to deliver the property to the Trustee." *Natalie*, at 7 (footnote omitted). While § 727(d)(1) requires a creditor to prove that he was unaware of the fraud prior to discharge, this requirement is conspicuously absent from § 727(d)(2). In affirming this court's decision in *Natalie*, the United States District Court for the Northern District of New York noted that some courts have nevertheless read the § 727(d)(1) requirement into (d)(2). *Keeffe v. Natalie*, 337 B.R. 11, 14 (N.D.N.Y. 2006) (Kahn, J.) (collecting cases), *aff'd* 222 Fed. Appx. 97 (2d Cir. 2007); *contra Lincoln Nat'l Life Ins. Co. v. Silver (In re Silver)*, 367 B.R. 795, 823–25 (Bankr. D.N.M. 2007) (debtor's failure to report to the trustee her entitlement to certain property and to turn over that property to the trustee violates § 727(d)(2), regardless of when a petitioning creditor knew or should have known of the possession or control of the property), *aff'd*, 378 B.R. 418 (B.A.P. 10th Cir. 2007); *see Still v. Gault (In re Gault)*, Ch. 7 Case No. 03-15724, Adv. No. 05-1050, 2006 WL 2270338, at *3 (Bankr. E.D. Tenn. Aug. 4, 2006) ("Section 727(d)(1) is subject to some additional limits. It

13

applies only if the plaintiff did not learn of the fraud before the discharge was entered."); *cf. Colombo Bank, FSB v. Barnes (In re Barnes)*, 348 B.R. 613, 616 (Bankr. D. D.C. 2006) ("A similar limitation could easily have been written into § 727(d)(3), and if Congress wanted such a limitation, it presumably would have included it in § 727(d)(3).").

This court respectfully declines to read the § 727(d)(1) requirement into (d)(2). In *Natalie*, this court held that the petitioning creditor failed to carry her burden under § 727(d)(1) because she failed to show that she only learned of the debtor's fraud post-discharge. *Natalie*, at 5–7. The petitioning creditor also failed to carry her burden under § 727(d)(2) based on the facts that the debtor had reported her interest in one corporate entity, Blue Crystal, LLC, and that the debtor did not have an interest the other corporate entity, Deforte Enterprises, Inc. *Natalie*, at 7–9. The District Court affirmed this court's order in its entirety. 337 B.R. at 14. Only proceeding *arguendo* did the District Court state that "revocation of the discharge is nevertheless improper because Appellant has not demonstrated by a preponderance of the evidence that she became knowledgeable of Debtor's fraud only after Debtor's discharge from bankruptcy." *Id.* The Second Circuit summarily affirmed the result, but not the underlying statements made by the District Court. 222 Fed. Appx. 97. The District Court's discussion regarding § 727(d)(2) was not necessary to the actual holding of the case and is therefore dicta.[7]

Returning to the present case, it is apparent that the Debtor violated § 727(d)(2) in several ways. The elements of the Trustee's claim may be divided into four parts:

> (1) that the debtor acquired or became entitled to acquire certain property; (2) the property in question was property of the

---

[7] Even if the District Court's discussion were not dicta, it is nevertheless non-binding. *See First of America Bank v. Gaylor (In re Gaylor)*, 123 B.R. 236, 242–43 (Bankr. E.D. Mich. 1991) (citation omitted) ("As a unit of the district court, the bankruptcy court is only bound by precedent binding on members of the district court. When a district court is composed of more than one district judge, a decision of one judge does not speak for or bind the district as a whole. As a result, a bankruptcy judge, acting on behalf of the district court, is not bound to follow the decisions of any single member of the district court, since the decision may not represent the views of the district as a whole.").

>   bankruptcy estate (or would be upon its acquisition); (3) the debtor failed to report the acquisition of or entitlement to such property or to deliver or surrender such property to the trustee; and (4) in so failing to report or deliver or surrender the property, the Debtor acted knowingly and fraudulently.

*Grossman v. Foster (In re Foster)*, 343 B.R. 385, 393 (Bankr. D. Mass. 2006). It is undisputed that the Debtor received post-petition payments under the Note and Mortgage and that the Debtor reported these payments on his tax returns. (Pl.'s Exs. 9, 13; Trial Tr. 52-53.) Under the Code's broad definition, the payments are "property of the estate." *See Mid-Island Hosp., Inc. v. Empire Blue Cross & Blue Shield (In re Mid-Island Hosp., Inc.)*, 276 F.3d 123, 128 (2d Cir. 2002); 11 U.S.C. §§ 541(a), 548. Even though the Debtor was receiving post-petition payments, he failed to report his entitlement to and acquisition of the payments, and he failed to deliver or surrender the payments to the Trustee. Accordingly, the Trustee has proven the first three elements of his claim. The Trustee must also prove the fourth element, that in so failing to report and deliver or surrender the payments to the Trustee, the Debtor acted both "knowingly and fraudulently." The Debtor acted knowingly because he knew that the post-petition payments belonged to the estate and that he was obligated to report or surrender them to the Trustee. The Debtor acted fraudulently because his conduct in failing to report or turnover the post-petition payments to the Trustee evinces his intent to defraud the estate. The Trustee has presented sufficient evidence to establish a prima facie case under § 727(d)(2). Therefore, the burden of production shifted to the Debtor to rebut the inference of fraudulent intent.

The court finds the Debtor's testimony lacking in credibility and unsupported by any other evidence. The Debtor's statement that he forgot about the Note and Mortgage and the State Street Property because he believed them to be worthless is simply not credible. His statement is contradicted by Seecharan's testimony that the State Street property was in fair

15

condition, and the fact that the property had recently sold for $100,000 and was encumbered by the Note and Mortgage which was paying $450 per month.

> Where property truly has no value, there is simply no reason *not* to list it: failure to list it can only expose a debtor to possible denial or revocation of discharge and, because the asset is in fact worthless, cannot profit the debtor; listing worthless property, on the other hand, will likely result in the trustee's abandoning the property back to the debtor at the close of the case.

*In re Foster*, 343 B.R. at 392.  As he periodically received payments under the Note and Mortgage, the Debtor knew that the Note and Mortgage had value.  The Trustee has received periodic payments totaling over $5,500 and has settled the balloon payment for $25,000, further evidencing value.  (Trial Tr. 60-62.)  The only reason not to report the Note and Mortgage, or the payments made thereunder, would be to dissuade the Trustee from pursuing administration of the Note and Mortgage and to protect St. Andrews and the Debtor as recipients of the payments.

The court further finds that the Debtor's false statement, that his Petition was truthful and accurate when it failed to disclose the assignment, was made with the intent to deceive the Trustee.  The Debtor's subsequent affidavit, explaining the assignment, was also made with the intent to deceive the Trustee into believing that the Note and Mortgage was "worthless" and that the debt had no "significant value."  Although the Debtor claims that the events surrounding the Petition caused him to forget about the Note and Mortgage, his claim is undermined by the frequency and timing of the post-petition payments.  It is undisputed that the Debtor received the following post-petition payments: (1) the obligors' payment of $450 made fourteen days before the first meeting of creditors; (2) the obligors' payment of $450 made the same day as the second meeting of creditors; (3) the obligors' payment of $450 made two days after the third meeting of creditors; (4) the obligors' payment of $450 made seven days after the fourth meeting of creditors; and (5) the obligors' payment of $450 made three days after the fifth meeting of

16

creditors. The Debtor received at least five post-petition payments while the meeting of creditors was still open but at no time did he disclose either the existence of the Note and Mortgage or its assignment. Nor did he turn over any of the payments personally collected by him from the obligors. Had the Debtor's decision not to disclose the Note and Mortgage been based on a good-faith belief that it was entirely worthless, then upon receiving the ongoing payments, he would immediately have realized that his original course of action was based on a false premise and that he now needed to bring the Note and Mortgage and its payments to the attention of the Trustee. That this obligation never dawned on him is incredible.

Finally, the Debtor inexplicably asked Seecharan to switch to making payments in the form of money orders as opposed to checks and then later, to make payments in cash. The actions of the Debtor, a sophisticated real estate investor, transferring property of the estate that he knew had value, with the intent to put it out of the reach of his Trustee and creditors, and not advising the Trustee of the transfer, were not those of the honest debtor properly fulfilling his duties, including his § 521 duties to cooperate with the Trustee and surrender property of the estate to the Trustee, so as to earn for him a discharge of $37,299.00 in scheduled unsecured debt. *See In re Bosket*, 369 B.R. at 110–11. For the reasons outlined above, the Trustee has established that the Debtor knowingly and fraudulently did not report his post-petition receipt of payments made on the Note and Mortgage.

A discharge is reserved for an honest but unfortunate debtor. *D.A.N. Joint Venture v. Cacioli (In re Cacioli)*, 463 F.3d 229, 234 (2d Cir. 2006). To obtain a discharge, a debtor must fully and accurately disclose all material facts. *See Cont'l Ill. Nat'l Bank & Trust Co. of Chi. v. Bernard (In re Bernard)*, 99 B.R. 563, 570 (Bankr. S.D.N.Y. 1989). On the basis of all of the evidence presented, the court concludes that the Trustee has satisfied his burden of proving, by a

preponderance of the evidence, that the Debtor's discharge should be revoked pursuant to

§ 727(d)(2).

## CONCLUSION

Based upon the foregoing, the Debtor's discharge should be and is hereby revoked.

It is so ORDERED.

/s/ Robert E. Littlefield, Jr.

Dated: May 3, 2010          _____
Hon. Robert E. Littlefield, Jr.
Chief United States Bankruptcy Judge